OPINION *Page 2 
{¶ 1} Defendants-appellants Mohammad Meslat, dba Lakeshore Farm Market, Alhasake, Inc. dba Midtown Market and Mario Meslat appeal from the June 12, 2007, Judgment Entries issued by the Canton Municipal Court overruling their Motions to Vacate Judgment.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 6, 2006, appellee Amster-Kirtz Company filed a complaint (Case No. 2006-CVF-8736) against appellants Alhasake, Inc. dba Midtown Market c/o Mohammad Meslat and Mario Meslat[1] in the Canton Municipal Court. Appellee, in its complaint, alleged that such appellants had failed to pay it the sum of $3,260.98 for goods delivered by appellee to appellant Alhasake pursuant to a "Credit Application and Terms and Conditions of Sale." Appellee, in its complaint, further alleged that appellant Alhasake had presented four checks to appellee which were returned due to insufficient funds, for an additional $200.00 in damages. Moreover, appellee, in its complaint, alleged that the Sales Agreement executed by appellant Mario Meslat contained a personal guaranty and that appellant Mario Meslat was, therefore, personally liable to appellee in the amount of $3,460.98 ($3,260.98 plus $200.00).
 {¶ 3} On the same date, appellee filed a complaint (Case No. 2006-CVF-8759) against appellant Mohammad Meslat, dba Lakeshore Market, alleging that, in accordance with the Sales Agreement between the parties, appellee had delivered goods valued at $1,081.27 to such appellant and that such appellant had failed to pay for the same. Appellee further alleged that such appellant had presented a check to it *Page 3 
which was returned for insufficient funds for an additional $50.00 in damages. Appellee alleged a total of $1,131.27 in damages ($1,081.27 plus $50.00).
 {¶ 4} With respect to Case 2006-CVF-8736, appellant Meslat was personally served with a copy of the summons and complaint by certified mail at his home address on November 9, 2006. In addition, a copy of the summons and complaint sent by certified mail to the address of the Midtown Market was signed for on November 8, 2006 by Brenda Lafferty.
 {¶ 5} With respect to Case No. 2006-CVF-8759, appellant Meslat was personally served by certified mail with the summons and complaint at his home address on November 9, 2006. A copy of the summons and complaint sent by certified mail to the address of the Lakeshore Farm Market was signed for on November 30, 2006 by Gaston Dowthy.
 {¶ 6} After appellants failed to file an answer in either case, appellee, on December 21, 2006, filed Motions for Default Judgment in both cases. Pursuant to a Judgment Entry filed on December 26, 2006 in Case No. 2006-CVF-8736, appellee was granted judgment against appellants Alhasake, Inc., dba Midtown Market and Mario Meslat in the amount of $3,460.98 plus interest. Pursuant to a separate Judgment Entry filed on December 28, 2006 in Case No. 2006-CVF-8759, appellee was granted judgment against appellant Mohammed Meslat, dba Lakeshore Farm Market in the amount of $1,131.27 plus interest.
 {¶ 7} Thereafter, on May 25, 2007, appellants filed Motions to Vacate Judgment pursuant to Ohio Civil Rule 60(B) in both cases. Attached to both motions was an affidavit from appellant Mohammad Meslat. Appellant Meslat, in his affidavits, alleged *Page 4 
that he was in an automobile accident on October 29, 2006, and that, due to his injuries and medications that he was on, he was not able to engage in his normal routine, including the running of his businesses. He further alleged that he had to close his business for a few months after the accident. Appellant Meslat further alleged in his affidavits as follows:
 {¶ 8} "Affiant further says that he became aware on May 22, 2007, that his minor daughter signed a certified mail service for him giving him notice that a debtor's examination was scheduled in this matter on June 20, 2007, which caused him to request undersigned counsel to represent him and which resulted in a docket check of this matter which reveals service on Defendant back on November 9, 2006, upon a person who helped him out in the store right after the accident and in another case filed simultaneously with Case No. 206 CVF 8736, namely, Case No. 2006 CVF 8759 by the Plaintiff against him, by a tenant at the commercial address of 14824 Lakeshore Boulevard, Cleveland, Ohio and that he does not recall being informed by either of these people that mail came for him and was not otherwise aware that these undesignated persons signed mail for him and neither are his agent per se.
 {¶ 9} "Affiant futher (sic) says that he has a dispute with the Plaintiff as to an alleged amount of indebtedness and wants the opportunity to be heard so that he may raise his legal and equitable defenses in this dispute between these parties by having his full day in court to decide the merits of this case."
 {¶ 10} A joint hearing on both of appellants' Motions to Vacate Judgment was held before the trial court on June 11, 2007. Appellant Mohammad Meslat, his counsel and appellee's counsel were present at the hearing. *Page 5 
 {¶ 11} At the hearing, appellant Mohammad Meslat testified that he was the owner and President of a corporation named Alhasake, Inc. located in Elyria, Ohio and that Lakeshore Farm Market was not a corporation. Appellant Meslat testified that he did not recall being served with a copy of the complaint and did not become aware until he was notified of the judgments against him.
 {¶ 12} Appellant Meslat testified that the order which appellee had delivered to Lakeshore Market was the wrong order and that he had called appellee and was told that it would take care of the problem. According to appellant Meslat, appellee never did. He further testified that, at one point, appellee agreed to go to the Lakeshore Market to pick up money because the check that was sent to appellee was returned due to insufficient funds. Appellant testified that the order to Lakeshore Market was short two cartons of cigarettes. He further testified that, due to his car accident, he had shots of morphine in his back and took pain mediation that caused him to become sleepy and dizzy. Because of the accidents appellant Meslat was not able to drive or carry more than three pounds.
 {¶ 13} On cross-examination, appellant Meslat was questioned about the $1,087.21 invoice (Exhibit C) for Lakeshore Market. He testified that the signature on the invoice "could be" someone who worked for him and agreed that the invoice stated that a signature signified a correct cigarette count. He further testified that, on the credit application for Alhasake, Inc. he signed under the word guarantor.
 {¶ 14} On redirect, appellant Meslat testified that when cigarette cartons are delivered, he does not normally stand and count them while the delivery person waits. Appellant testified that if there is a discrepancy in an order, he normally calls appellee's *Page 6 
office and that when he called to report that two cartons of cigarettes were missing from the Lakeshore Market order, he was not told that, because of the signature on the invoice, appellee was unable to help him.
 {¶ 15} As memorialized in Judgment Entries filed on June 12, 2007 in both cases, the trial court overruled both of appellants' Motions to Vacate Judgment, holding that appellants had failed to demonstrate a meritorious defense and excusable neglect.
 {¶ 16} Appellants now appeal from the trial court's June 12, 2007, Judgment Entry in Case No. 2006-CVF-8759. Such appeal has been assigned Case No. 2007CA00189. Appellants also appeal from the trial court's June 12, 2007, Judgment Entry in Case No. 2006-CVF-8736. Such appeal has been assigned Case No. 2007CA00190.
 {¶ 17} Appellants raise the following assignments of error in both cases:
 {¶ 18} "I. THE TRIAL COURT ERRED BY APPLYING THE WRONG STANDARD IN DECIDING DEFENDANTS-APPELLANTS' MOTION TO VACATE PURSUANT TO OHIO CIVIL RULE 60(B).
 {¶ 19} "II. THE TRIAL COURT ERRED BY ALLOWING EXHIBITS TO BE INTRODUCED INTO EVIDENCE OVER DEFENDANTS-APPELLANTS' OBJECTION WHEN THE PLAINTIFF DID NOT APPEAR TO INTRODUCE SAME INTO EVIDENCE AND THE SAME WAS NOT OTHERWISE AUTHENTICATED.
 {¶ 20} "III. THE TRIAL COURT ERRED BY PROCEEDING WITH THE EVIDENTIARY HEARING WHEN THE PLAINTIFF DID NOT APPEAR. *Page 7 
 {¶ 21} "IV. THE TRIAL COURT ERRED AS ITS DECISION WAS ARBITRARY, UNREASONABLE AND UNCONSCIONABLE AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 22} "V. THE TRIAL COURT ERRED WHEN IT FOUND THAT IT HAD SUBJECT MATTER JURISDICTION OF THE ISSUES ALLEGED IN THE COMPLAINT AS CONCERNS TRANSACTIONS THAT OCCURRED IN LORAIN COUNTY, OHIO AND CUYAHOGA COUNTY, OHIO.
 {¶ 23} "VI. THE TRIAL COURT ERRED BY NOT CONDUCTING SEPARATE EVIDENTIARY HEARINGS FOR CASE NOS. 2006 CVF 8759 AND 2006 CVF 8736 GIVEN ONLY THE PLAINTIFF IS THE SAME, BUT THE DEFENDANTS-APPELLANTS ARE DIFFERENT ENTITIES."
 {¶ 24} Although not consolidated, we shall address the two cases together for purposes of judicial economy.
 I, IV {¶ 25} Appellants, in their first assignment of error in each case, argue that the trial court applied the wrong standard in ruling on appellants' Motions to Vacate pursuant to Civ. R. 60(B). Appellants, in their fourth assignment of error in both cases, argue that the trial court's decision was arbitrary, unconscionable or unreasonable. We disagree.
 {¶ 26} Civ. R. 60(B) provides the basis upon which a party may obtain relief from judgment, and states in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable *Page 8 
neglect; . . . or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules." "A motion for relief from judgment under Civ. R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion." Griffey v. Rajan
(1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122. See also Citibank (SouthDakota), N.A. v. Stein, Fairfield App. No. 05CA71, 2006-Ohio-2674
at paragraph 27.
 {¶ 27} The Ohio Supreme Court interpreted Civ. R. 60(B) in the seminal case of GTE Automatic Electric, Inc. v. ARC Industries, Inc. (1976),47 Ohio St.2d 146, 351 N.E.2d 113 as follows: "To prevail on his motion under Civ. R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2), or (3), not more than one year after the judgment, order or proceeding was entered or taken." Id. at 150-151.
 {¶ 28} As an initial matter, we note that appellants contend that the trial court applied the wrong standard in ruling on their Motions to Vacate. As is stated above, the trial court, in its June 12, 2007, Judgment Entries, stated that it found that appellants had failed to demonstrate a meritorious defense and excusable neglect. There is no evidence that the trial court applied the wrong standard. *Page 9 
 {¶ 29} The issue thus becomes whether the trial court abused its discretion in overruling appellants' Motions to Vacate. While appellants maintain that they demonstrated excusable neglect for their failure to answer, we disagree. The record establishes that appellant Mohammad Meslat was personally served with a copy of the summons and complaint in both cases at his home on November 9, 2006. Appellant Mohammad Meslat testified that he was unable to respond to the two complaints because, due to a car accident, he was on pain medication for a back injury.
 {¶ 30} However, we "have no operative facts as to the severity of [appellant's] mental condition or whether [his] condition would have rendered [him] incompetent for purposes of receiving service or comprehending [him] legal obligations." See Fouts v. Weiss-Carson
(1991), 77 Ohio App.3d 563, 566, 602 N.E.2d 1231. While appellant testified that he was on pain medication and that he was not permitted to drive a vehicle, there was no medical evidence before the trial court that appellant Mohammad Meslat was incompetent due to his pain and/or the medications that he was taking and could not manage his business affairs. We find, therefore, that appellants failed to establish excusable neglect.
 {¶ 31} We further find that the trial court did not abuse its discretion in overruling appellant's motions because appellants failed to demonstrate that they had a meritorious defense in either case. At the hearing in this matter, appellant Mohammad Meslat testified that, with respect to the Midtown Market, he executed the Credit Application and Terms and Conditions of Sale and that he also signed the personal guaranty. Testimony also was adduced that a check that was written to appellee on the appellant Alhasake's account on September 1, 2006, in the amount of $1,667.68 was *Page 10 
returned due to insufficient funds. As noted by appellee, appellants did not at the hearing even allege a meritorious defense with respect to Case No. 2006-CVF-8736.
 {¶ 32} With respect to the Lakeshore Farm Market (Case No. 2006-CVF-8759), appellant testified at the hearing that he had a defense because his order was incomplete. However, testimony was adduced at the hearing that a check written on the account of Lakeshore Farm Market to appellee on August 31, 2006, for the full amount was returned due to insufficient funds and that, after being notified that the check was returned, appellant Meslat testified that he called appellee's office and agreed that appellee's salesman could come and pick up the money. Appellant Meslat further testified that the money was "there waiting for him to come and collect." Transcript at 13.
 {¶ 33} Based on the foregoing, we find that appellants failed to demonstrate that they had a meritorious defense in either case.
 {¶ 34} The trial court, therefore, did not err in overruling appellants' Motions to Vacate Pursuant to Civ. R. 60(B).
 {¶ 35} Appellants' first assignment of error in each case is, therefore, overruled.
 II {¶ 36} Appellants, in their second assignment of error in each case, contend that the trial court erred in allowing exhibits to be introduced into evidence over their objection when appellee did not appear to introduce the same into evidence and the same was not otherwise authenticated.
 {¶ 37} At the hearing in this matter, appellee presented the check that was issued to appellee from Lakeshore Farm Market and returned due to insufficient funds *Page 11 
(Exhibit A), the check that was issued to appellee from Alhasake, Inc. and returned due to insufficient funds (Exhibit B), and the invoice for Lakeshore Farm Market showing a balance due and owing of $1,087.27 (Exhibit C). The final exhibits (Exhibit D E) that appellee admitted were the Credit Applications for Lakeshore Farm Market and Midtown Market.
 {¶ 38} At the hearing, appellants' counsel objected to the admission of such documents, stating as follows:
 {¶ 39} "BY MS. MESLAT: Well, I'll object for the record, but there's no one that I can cross examine to present it, and and (sic) hearsay grounds or other ability to authenticate it's origin or even whether it's the original — in fact, that one document is clearly an altered document. It has a piece a paper taped onto it. For those reasons, I would object, yes, Your Honor." Transcript at 25.
 {¶ 40} However, with regard to an objection based on lack of authentication, the provisions of Evid. R. 901(A) require only that a proponent of a document produce "evidence sufficient to support a finding that the matter in question" is what the proponent claims it to be. With respect to Exhibits A and B (the two checks), appellant Meslat testified that the checks were returned due to insufficient funds. When questioned about Exhibit C, the invoice for Lakeshore Market, appellant Mesalt testified as follows:
 {¶ 41} "Q. Okay. And is that for Lakeshore Market?
 {¶ 42} "A. Yes.
 {¶ 43} "Q. And how much was the invoice for?
 {¶ 44} "A. It was one thousand eighty-one twenty-seven. *Page 12 
 {¶ 45} "Q. Now there's a signature about two thirds of the way down. Do you recognize that signature?
 {¶ 46} "A. No, sir.
 {¶ 47} "Q. You don't recognize that as anyone who works for you?
 {¶ 48} "A. Mmm, must — must be they signed, yes. I don't recognize that.
 {¶ 49} "Q. Okay. So you think that somebody — it must be the signature of somebody who worked for you then?
 {¶ 50} "A. Could be." Transcript at 18-19.
 {¶ 51} Moreover, with respect to Exhibits D E, which were the Credit Applications for the two markets, appellant admitted signing the same under the word guarantor. In short, as noted by appellee, appellant Meslat himself authenticated the documents.
 {¶ 52} Furthermore, pursuant to Evid. R. 1003, a duplicate of a document is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original or in the circumstances it would be unfair to admit the duplicate in place of an original. With respect to Exhibits A, B, D, and E, appellant Mohammad Meslat did not raise a genuine question as to the authenticity of the checks and Credit Applications and did not present any evidence that it would be unfair to admit duplicates of the same.
 {¶ 53} Appellants' second assignment of error, in each case, is therefore, overruled. *Page 13 
 III {¶ 54} Appellants, in their third assignments of error in each case, argue that the trial court erred in proceeding with the hearing on June 11, 2007, when appellee did not appear.
 {¶ 55} As is stated above, appellant Mohammad Mesalt, his counsel and appellee's counsel appeared at the June 11, 2007, hearing. No representative appeared on appellee's behalf.
 {¶ 56} However, as noted by appellee, there is no requirement in the Civil Rules or elsewhere requiring a party to attend a hearing unless ordered to do so. Appellee was not ordered to appear at the hearing in this case. Moreover, because appellants filed the Motions to Vacate, the burden was on them to demonstrate that the requirements of Civ. R. 60(B) have been met. The burden was not on appellee and, for such reason, appellee need not appear.
 {¶ 57} Appellants' third assignment of error in each case is, therefore, overruled.
 V {¶ 58} Appellants, in their fifth assignment of error in each case, argue that the trial court erred in finding that it had subject matter jurisdiction of the issues alleged in the complaints. We disagree.
 {¶ 59} Ohio municipal courts can exercise only such powers as statutes confer upon them. State ex rel. Foreman v. Bellefontaine Mun. Court
(1967), 12 Ohio St.2d 26, 27, 231 N.E.2d 70. R.C. 1901.17 states, in relevant part, as follows: "A municipal court shall have original jurisdiction only in those cases in which the amount claimed by any party, or the appraised value of the personal property sought to be recovered, does not *Page 14 
exceed fifteen thousand dollars, except that this limit does not apply to the housing division or environmental division of a municipal court. As relevant here, R.C. 1901.18(A)(3) provides that "subject to the monetary jurisdiction of municipal courts * * *, a municipal court has original jurisdiction within its territory in * * * any action at law based on contract."
 {¶ 60} There is no dispute that appellee's two complaints both are based upon a contract claim and that the amount sought in both does not exceed $15,000.00. Therefore, the Canton Municipal Court had subject matter jurisdiction over this particular matter.
 {¶ 61} However, appellants argue that the Canton Municipal Court did not have territorial jurisdiction because appellant Meslat resides in Cuyahoga County and the two markets are located in Lorain County. Appellants contend that the transactions in both cases occurred in Lorain County.
 {¶ 62} Appellants are, in essence, challenging venue in this case. Venue "relates to the geographic division where a cause can be tried [.]" Morrison v. Steiner (1972), 32 Ohio St.2d 86, 88, 290 N.E.2d 841. Pursuant to Civ. R. 3(B), proper venue lies in the "county in which the defendant conducted activity that gave rise to the claim for relief" or in the "county in which all or part of the claim for relief arose." Civ. R. 3(B)(3) and (6). In a contract collection action, that county may include the location where the appellant was required to deliver money to the appellee. Soloman v. Excel Marketing, Inc. (1996),114 Ohio App.3d 20, 25-26, 682 N.E.2d 724. See also Oxford Systems Integration,Inc. v. Smith-Boughan Mechanical Services, 159 Ohio App.3d 533,2005-Ohio-210, 824 N.E.2d 586, in which the court held that the county in which the appellee had its offices *Page 15 
(Miami County) was a proper venue for its action on an account against a customer. The court in such case noted that while the appellant complained that the only connection Miami County had with the transaction is that the appellant had sent several payments to the appellee at its offices in Miami County, "[w]e have held that form of contact sufficient to withstand a motion for change of venue." Id. at paragraph 27.
 {¶ 63} In the case sub judice, appellants were required to pay appellee in Canton, Ohio which is located in Stark County. The complaints in both cases are based on appellants' alleged failure to do so. We find, therefore, that venue was proper in the Canton Municipal Court.
 {¶ 64} Appellants' fifth assignment of error in each case is, therefore, overruled.
 VI {¶ 65} Appellants, in their final assignment of error in each case, contend that the trial court erred in not conducting separate evidentiary hearings in the two cases. Appellants note that while the plaintiff is the same in both cases, the defendants are different entities.
 {¶ 66} We note that at no point did appellants request separate hearings in this matter. We further note that there was only one witness and that appellants' counsel, during direct examination, questioned appellant Meslat about both cases. Thus, appellants were not prejudiced.
 {¶ 67} Appellants' sixth assignment of error in each case is, therefore, overruled. *Page 16 
 {¶ 68} Accordingly, the judgments of the Canton Municipal Court in Case Nos. 2006-CVF-8736 and 2006-CVF-8759 are affirmed.
Edwards, J., Farmer, P.J., and Delaney, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgments of the Canton Municipal Court, in Case Nos. 2006 CVF 8736 and 2006 CVF 8759 are affirmed. Costs assessed to appellants.
[1] From the record, it appears that Mohammad Meslat and Mario Meslat are the same person. *Page 1